## INSURANCE—LIFE.

[Lucas (6th) Circuit Court, June 13, 1903.]

### MINNIE SWANDER v. NORTHERN CENTRAL LIFE INSURANCE CO.

1. NOTICE NECESSARY TO FORFEITURE OF POLICY, WHEN.

    Where a life insurance policy contains no clause of forfeiture and no provision for forfeiture, failure to pay the premiums on or about the day when they become due will not immediately work a forfeiture, but will merely suspend the rights of the insured in the policy until the amount due is paid or until the lapse of such length of time as will indicate that he does not intend to pay and has practically withdrawn. But before such a policy can be forfeited there should be some declaration to that effect on the part of the company and notice thereof given to the insured.

2. FACTS SHOWING WAIVER OF FORFEITURE BY INSURER.

    Where, in an action upon a life insurance policy, the evidence shows that the company repeatedly collected the monthly premiums upon the policy after they were due, and, on January 14 collected the monthly premiums due November 1 preceding and again on January 25, attempted to collect the premiums due December 1 and January 1, but upon learning that the insured died on the preceding day refused to accept the premium and gave no notice to the insured of its intention to suspend or forfeit the policy, there is evidence tending to show that the company had waived its right to suspend or forfeit the policy for nonpayment, and it is error to direct a verdict for the company.

3. RULE FOR CONSTRUCTION OF CONTRACT OF INSURANCE.

    A policy of insurance, being drawn by the insurer, is to be construed most strongly against him.

ERROR to the court of common pleas.

**A. T. Gourley,** for plaintiff in error.

**R. W. Kirkley** and **E. W. Tolerton,** for defendant in error.

**HULL, J.**

This action was brought by the plaintiff in error, who was also the plaintiff below, upon a certain life insurance policy, issued for her benefit upon the life of her sister, Hattie Cappell, the first day of April, 1901, the premiums to be paid monthly in advance, the amount being eighty-eight cents per month. The premium for some months, which was required by the policy to be paid on the first day of the month, was paid, but no premium falling due after November 1, 1901, was paid, and on January 24, following, 1902, Mrs. Cappell, on whose life the policy was issued, died. On January 14 preceding that the premium due up to November 1, 1901, was paid to and accepted by the company, and ten days later Mrs. Cappell, as stated, died. Payment of the policy was refused by the company, on the ground that it had lapsed on account of default in payment of premium, and action was brought by the beneficiary, Mrs. Minnie Swander, the plaintiff.

At the conclusion of plaintiff's testimony, upon motion of the defendant, the jury was directed to return a verdict in favor of the defendant, on the ground that the policy had been forfeited, and had lapsed on account of the nonpayment of premiums as provided in the policy. Judgment was entered upon this verdict, and it was to reverse this judgment of the court of common pleas that a petition in error was filed here; and the question is, whether under the facts as shown by the record in this case and under the contract of insurance that existed between the parties, the evidence offered by the plaintiff showed as a matter of law that the policy had been forfeited or had lapsed.

The plaintiff in her petition sets up certain things which she claims constituted a waiver on the part of the company of the right to have the premiums paid on the first day of each and every month. It was shown in the evidence that, after the first two or three months, there were no premiums paid on the first day of the month, but that they were paid at subsequent dates, and that no notice was given to Mrs. Swander that the policy was forfeited or had lapsed, and the last premium was accepted by the company on January 14, ten days before the death of Mrs. Cappell. And a question further arises as to whether, under the terms of this policy, the insurance would become forfeited or lapsed by reason of the nonpayment of the premium on the first day of each month.

A few general principles may be stated at the outset. Where a policy of insurance contains a clause of forfeiture by reason of the nonpayment

Swander v. Northern Central Life Insurance Co.

of premiums at a certain time, it is a valid part of the contract and the policy may be forfeited unless prohibited by statute. The general rule is, that clauses or provisions of forfeiture are to be construed strictly and are not encouraged by the courts. As was said by our Supreme Court in Union Cent. Life Ins. Co. v. Pottker, 33 Ohio St. 459, forfeitures are odious and must be strictly construed, and there are many other authorities to this effect.. This policy does not contain any clause of forfeiture; it contains no such clause as is ordinarily inserted in insurance policies. It provides: "This contract is made in consideration of the application which is made a part hereof, and of the payment in advance to the company or its authorized representative, of one month's premium $.88 due on date of issue of this policy and a like amount to be paid monthly thereafter during the continuance of this contract. * * * The company will not contest the payment of this policy except for fraud or nonpayment of premium, provided that should death occur while engaged in military or naval service in time of war, without a permit, the liability of the company shall be limited to the net reserve on this policy computed according to the legal standard of the state of Ohio."

That clause of the policy seems to recognize the fact that the nonpayment of dues could be or might be a defense to the payment of the policy. It provides further along, that should this policy lapse after payments have been made for three full years, then certain conditions would follow—not necessary to quote, and I only refer to this to show that the policy does contemplate that it might lapse under certain circumstances. The question in the case, of course, is to be considered in the light of the policy which we have before us, a policy which contains no absolute clause of forfeiture.

Briefly as to the facts of the case. It appears from the testimony and as set down in the book which was given to the insured in which to have the payments of premiums recorded, that the first payment of eighty-eight cents, due April 1, was paid and all of the other payments were made to the duly authorized collectors of the company, and one payment at least was made to the superintendent of the company. The second payment, due May 1, was paid on the date it became due. The third payment, due June 1, was not paid until June 15. The payment due July 1 was not paid until July 6; the next payment, due August 1, was not paid until August 3; the next payment, due September 1, was not paid until November 23, and the next payment, due October 1, 1901, was not paid until January 14, 1902. The collectors called at the house at various times to collect these payments—not always calling on the first of the month and sometimes calling two or three times during the month. In

the fall sometime, perhaps in November, one of the agents suggested to Mrs. Swander that she ought to pay up her premiums, or she might get no benefit out of the policy, but there was no statement made to her that the policy would be forfeited, nor did she understand that it would be forfeited on account of her being back in her payments. Her testimony on this subject is found on page eight of the record, where she says that Mr. Trailour told her that she would have to "catch it up" or it wouldn't be of any benefit to her, and she told him that she would "catch it up" as quickly as she could. This is the only conversation or communication, according to the evidence, she had on this subject with any representative of the company.

The last payment was made on January 14, but the agent came to her house to collect the balance due on premiums on January 23. For some reason it was not paid then. I believe Mrs. Swander was not at home. She had the money to pay it, and he promised to come the next day. He did not come the next day, but came the following day, the twenty-fifth, and meanwhile Mrs. Cappell had died. He came to the house on January 25, to collect the premiums then due, amounting to $1.76, and the evidence shows that plaintiff was prepared to pay and had the money to pay, but upon being informed that Mrs. Cappell was dead the agent declined to receive the money.

So it appears that these premiums were received from time to time after the first day of the month, without objection and without any notice to Mrs. Swander that her policy would be forfeited or lapse on account of nonpayment on the exact day they became due, and collections were made, as stated, as far along as January 14, and a visit to the house to collect on the day after Mrs. Cappell died, and no attempt was made to forfeit the policy or to declare a forfeiture until after the death of Mrs. Cappell. In the book furnished by the company in which the payments of the premiums were recorded there is a printed notice to the insured which is significant and which indicates that it was not contemplated by the insurance company that these premiums in all cases should be paid on the day they were due. This is under the heading—"Notice to Policy Holders." It says:

"All premiums are due monthly in advance, and the company's agent is instructed to call regularly to collect them, but his omission or neglect to do so will not be any excuse for nonpayment. In cases of such omission or neglect, the premiums must be sent to the home office, Toledo, Ohio, stating the number of your policy and the name of the collector."

So that although this recites that the failure of the agent to call will not be any excuse for not paying, it does not inform the policy holder

Swander v. Northern Central Life Insurance Co.

that it will cause the policy to lapse, but it notifies him that the premium is to be sent to the home office, and under such a notice the policy holder would be entitled to wait at least until the first day of the month had gone by before being required to send the money to the home office, and the notice provides for payment in case the agent neglects to call on the first day of the month. And the part of the book—which is a printed blank devoted to the recording of the premiums due the first day of the month—contains a heading providing for the recording of the payment of the premium when it is not paid on the first of the month. One of the headings is "Date when due," and then under subheads are "Day of the month" and "Year." And then another heading is "Date when paid" and under that again "Day of month" and "Year." So that the book which was furnished to the collector and left with the insured had in it provisions for recording payments of premiums upon a date other than that on which·they were due, and it would hardly be presumed that it was intended to provide for payments of premiums before they were due, but it provides clearly for the entering of payments after they were due and to keep a record of the date when they were due and of the date when actually paid and accepted by·the company.

Now, considering these facts, was it error for the court, on the conclusion of plaintiff's evidence, to direct a verdict in favor of the defendant? We are of opinion that it was; that the evidence offered by the plaintiff did not show as a matter of law that this policy had been forfeited.

The policy being drawn . by the insurer, is to be construed most strongly against the insurer. As was said in Brink v. Insurance Co. 49 Vt. 457:

"It is a fundamental rule in the law of insurance that·the policy shall be construed most strongly against the insurer and liberally in favor of the assured. The policy is written by the insurers. They use their own language and surround and barricade their liability under it with such defenses as they choose to adopt."

In Yeaton v. Fry, 9 U. S. (5 Cranch) 335, 341, Chief Justice Marshall says:

"The words are the words of the insurer, and not of the insured."

And, on the question of forfeiture clauses, our own Supreme Court has expressed itself several times to' the effect that they should be construed strictly.

In Blackwell v. Insurance Co. 48 Ohio St. 533, 540 [29 N. E. Rep. 278; 14 L. R. A. 431], the court say:

"In this case, on page ten, Johnson, J., refers with approval and in

the following language to the views on the subject contained on page seventy-four of May on Insurance: 'Exceptions in a policy should be strictly construed, and where there are two interpretations equally fair, that which gives the greater indemnity should prevail.' And on page thirteen (27 Ohio St.) the same learned jurist says: 'Stipulations in a contract providing for disabilities or forfeitures are to receive, when the intent is doubtful, a strict construction against those for whose benefit they are introduced.' "

And in Webster v. Insurance Co. 53 Ohio St. 558 [42 N. E. Rep. 546], the Supreme Court say, in the syllabus:

"Provisions for forfeitures are to receive, where the intent is doubtful, a strict construction against those for whose benefit they are introduced.

"If it be left in doubt, in view of the terms of the instrument and the relation of the contracting parties, whether given words were used in an enlarged or a restricted sense, other things being equal, that construction will be adopted which is most beneficial to the promisee."

And in Union Central Life Ins. Co. v. Pottker, 33 Ohio St. 459, the Supreme Court say:

"Forfeitures are odious, and there must be no cast of management or trickery to entrap a party into a forfeiture."

It must not be lost sight of that in this policy of insurance—a very unusual thing—there is no clause of forfeiture and no provision for forfeiture. We, however, are of opinion that under such a policy as this, if the premiums were not paid on or about the date when due, that this would work a suspension at least of the policy and take from the party his right under it until he had paid what was due, and whether the company would be required to accept payment at the time it was offered, might depend somewhat upon the circumstances. It would be unjust and inequitable to permit a party to go for a long time without paying his life insurance premium, even under such a policy as this, and, when he was in bad health, or on his death-bed, to permit him to pay up and revive his insurance policy. The contract of insurance is of such a character that the success of the whole scheme depends upon each party, every policy holder paying his premiums and paying his dues. A company cannot do business unless the dues are paid substantially as they become due, for the ability of the company to pay the losses as they accrue depends upon the policy holders paying their dues with reasonable promptness.

The question of the character of the contract of insurance is discussed very fully in two decisions of the Supreme Court of the United

States, in New York Life Ins. Co. v. Statham, 93 U. S. 24, and Miller v. Brass Co. 104 U. S. 350, 352. We think that under such a policy as this, where there is no clause of forfeiture, that a failure to pay would only work a suspension of the rights of the party under the policy until such a length of time had gone by as would show that the party did not intend to pay and had practically withdrawn, and it would, therefore, be inequitable and unjust to permit him to pay and thus revive the policy. But, where there is no clause of forfeiture in the policy, before the policy can be forfeited, in our judgment, there should be some declaration to that effect on the part of the company and notice given to the insured, so that the insured may not allow a month, or two or three months to go by without any knowledge that his policy is to be forfeited and finally after his death the beneficiary be deprived of the benefits of the policy.

A case in point is found in Mutual Life Ins. Co. v. French, 30 Ohio St. 240, where a policy of insurance provided for a forfeiture for nonpayment of premium, and where a note was given for a portion of the premium and a check for the other part, the note containing the clause: "If not paid at maturity, said policy shall be null and void." Neither note nor check were paid. It was held by the court, as stated in the first paragraph of the syllabus:

"The mere fact that the note was not paid at maturity, did not of itself avoid the policy. It gave the insurance company the option of declaring a forfeiture, but this option must be asserted by clear and unequivocal acts. The clause of forfeiture, being inserted in the note for the benefit of the company, may be waived by failure to act, or other circumstances evincing an intention not to claim the benefit of the stipulation. Whether the company has exercised such option, or waived their rights, is a question of fact for the jury, under all the circumstances of the case."

In this case the note which was given provided upon its face, or in the body of it, that if the note was not paid at maturity the policy was to be null and void; and where such language as that was used the Supreme Court held that failure to pay the note when it became due would not of itself avoid the policy, but it gave to the company the option to declare it forfeited, if it saw fit, but it might waive that; and whether the company had exercised such an option, or waived the right, was a question of fact for the jury. The whole question is very fully discussed in the opinion. The court say on page 247:

"It cannot be successfully maintained that this clause makes the policy absolutely void upon nonpayment of the note. Under the authorities such a clause, being introduced for the benefit of the insurance company,

means that the policy shall be void if the company insist upon it, but that it is their option to say whether this result shall follow or not."

And they say, on page 251:

"As far as we are able to discover, therefore, there was nothing done to inform Mr. French that his policy was void, up to the sixth of July, 1868, when he went to arrange for the premium of that year, unless we take into account the statements of Simpson, which were left to the jury. We then cannot consider that the company exercised their option to forfeit, and their failure to do so was a waiver of such forfeiture."

And on page 252, the court say:

"It appears to us that the disposition to prevent and guard against forfeitures of this kind is plainly evinced by the authorities. * * *

"In Georgia Masonic Mut. Life Ins. Co. v. Gibson, 52 Ga. 640, the case was this: Gibson had his life insured, but upon his death the company contended that he had not paid up his dues, and so the insurance had been forfeited. He died in 1870, but in the spring of that year he had sent the company $35.25 in payment of all his dues. The company retained the money till after his death, without notifying him whether it was satisfactory or not. It was held that if the company received and retained the amount, this was a waiver of default. If the amount was not enough to pay past dues, it was the clear duty of the company to have promptly notified him. They should not have retained the money, and remained silent till after the death."

And, quoting from Teutonia Life Ins. Co. v. Anderson, 77 Ill. 384, the court say:

"It is held that upon a nonpayment of premium at the proper time the company have the right to declare a forfeiture; but if it failed to do so, it would be presumed that it chose to carry the risk, upon the responsibility of the party who had agreed to guarantee the payment. This case also holds that when a company has acknowledged in the policy the receipt of premiums, it will not be allowed to dispute such acknowledgment."

And on page 254, the court quote from Joliffe v. Insurance Co. 39 Wis. 111, 119, as follows:

"Forfeitures are not favored in the law, and will not be sustained upon mere inferences."

In a North Carolina case (Woodfin v. Insurance Co. 6 Jones Law Cases 558), it was held that where there was no clause of forfeiture the policy could not be forfeited for nonpayment, but that it was an absolute contract and the company could not claim a forfeiture, but could only look to the personal responsibility of the party liable for the premium.

Swander v. Northern Central Life Insurance Co.

This is the only case we have found where there was no clause of forfeiture in the policy. It was decided a great many years ago, by Chief Justice Pearson, when Judge Ruffin was upon the bench of that state and was one of the court.

In the syllabus, the court say:

"Where, by a policy of insurance, the life of a slave was insured for five years absolutely, without requiring the payment of the annual installment, as a condition of the defendant's liability, it was held that the insurance money for a loss, was not forfeited by a failure to pay such installment."

In the opinion, Chief Justice Pearson says:

"Upon the point that the policy was forfeited by reason of a failure on the part of the plaintiff to pay the annual installment, this court is of opinion with the plaintiff, irrespective of the question of notice. The policy contains no condition, by which it is to be void, if such payment is not made, but insures the life of the slave for five years, absolutely, in this respect—leaving the annual payment of $12.24 to be enforced, not as a condition, but as a part of the consideration."

Nor does this policy that is before us contain any condition that if the payment of premium is not made when due that the policy is to become void and cease and determine. There are some expressions in this policy which, it has been urged, indicate that nonpayment of dues might be regarded as a forfeiture of the policy and that the policy might, under certain circumstances, lapse; but there is no express provision of forfeiture, and in view of the authorities holding that where there is a provision of absolute forfeiture it is to be construed strictly in favor of the insured, and may be waived by the insurance company by its conduct, it would seem as though a court ought not to import into an insurance policy a clause of forfeiture which does not in fact there exist. But, as we have said, a contract of insurance is of such a peculiar character—whether it is a mutual company or a stock company—it being always to some extent a mutual arrangement, each person in the company depending on all the others paying their dues, it would be unjust and inequitable to permit a person to make his first payment on an insurance policy which contains no clause of forfeiture and permit him to have the benefit of an insurance contract for the remainder of his life without making any payments of premiums for the benefit of the company or for the benefit of the others who are insured; and we are of the opinion that, if a party under such a contract as this does not pay, on or about the date the premium is due, unless this is waived by the company the just and true rule would be that the rights of the party would be sus-

pended and the policy would be suspended until the amount due was paid; we think it is necessary to protect the rights of all the parties that such should be the law, but not that the insured should forfeit all of his rights under the policy without any provision for it in the contract.

Upon this question of suspension of the policy under these circumstances, I cite May, Insurance (3 ed.) Secs. 343 and 344, where the author says:

"If, however, the policy contains no such proviso, though the charter and by-laws require the payment of annual premiums, the nonpayment of the annual premium when due does not work a forfeiture. Such a policy insures for the number of years stipulated absolutely, leaving the annual payment of the premium to be enforced, not as a condition, but as a part of the consideration agreed to be paid. So if the policy is merely suspended while a premium or installment remains unpaid, a payment, even though upon a judgment recovered in a suit therefor, will revive the policy. But a part payment will not remove this suspension. Where a policy is to be void by nonpayment of a premium, yet capable of revival by subsequent payment, the company is not liable for loss occurring after default and before revivor, nor does it earn premiums during the period of suspension."

There are very few cases, upon such policies, because it is very unusual that a forfeiture clause is omitted, and the question seems to have seldom arisen. The question still remains whether the conduct of the insurance company was such that it had waived a suspension of the policy or the rights and benefits under the policy on account of the premiums not being paid when due. That is a question of fact for the jury. Upon this subject of waiver Thompson v. Insurance Co. 52 Mo. 469, is in point.

"Though a contract of insurance requires prompt payment of the premium or the policy will be forfeited, yet the insurers may waive this condition by a habit of receiving the premium after it is due."

In this case, on pages 472, 473, the court say:

"In contracts of insurance, as in other contracts, the parties may make the time of the performance of any stipulation of the very essence of the contract. In such case, the contract becomes utterly at an end, or void, as soon as the default is made. The stipulations in regard to the time of the payment of the premiums in this policy, I do not regard as of the essence of the contract. It was not so regarded by the parties themselves. By their acts and conduct the parties have construed this contract for themselves. It was not regarded by either party as of

the essence of this policy, that the premiums should be paid at the very day they became due.

"The memorandum at the foot of the policy did not give any additional force to the stipulation in the policy, if we may consider it as having any effect whatever. If it had any force it seemed to be looked upon by the parties as a license or invitation to the plaintiff to disregard the exact day of payment and to rely upon the courtesy of the company. The plaintiff pursued this course, and instead of making his payments on the very day when due, let them lie over for a short time, and still they were received without objection.

"The plaintiff was thus induced to believe that a failure of strict payment on the day would not prejudice his rights.

"The courts have become more liberal in their construction of those sort of stipulations in policies of insurance; formerly it was held, that when in a fire insurance policy it was required that additional insurance could not be taken without first obtaining the consent in writing of the company, to be indorsed upon the policy, it would become void if such consent was not in every case so indorsed. It was not sufficient to give notice of the additional insurance and rely upon the company's verbal consent thereto.

"The old rule required the consent to be in writing and indorsed upon the policy, but it is now understood to be the settled law of this state, that if notice be given to the company of the additional insurance and no objection is made, the company will be estopped from insisting on a forfeiture of the policy, because their consent thereto was not indorsed as required by the literal stipulation therein.

"So in regard to the payment of premiums, it seems to be well settled that the practice of the company in accepting the same without objection after the day stipulated for the payment, must be treated as a waiver of the exact time as an essential ingredient of the contract."

I cite also upon the general law of insurance and questions of waiver and claims of forfeiture, without quoting from them, the following cases: Massachusetts B. L. Assn. v. Robinson, 30 S. E. Rep. 918 [104 Ga. 256; 42 L. R. A. 261]; Mutual Reserve Fund Life Assn. v. Taylor, 37 S. E. Rep. 854 [99 Va. 208]; 18 Barb. 541; 26 Barb. 536; 65 Mo. 916; United States Life Ins. Co. v. Ross, 42 N. E. Rep. 859 [159 Ill. 476]; New York Life Ins. Co. v. Statham, 93 U. S. 24; Miller v. Brass Co. 104 U. S. 350, 352.

It is laid down by the Supreme Court of the United States in the two cases last cited that the payment of premium is not a condition precedent, but is a condition subsequent; that the theory that the pre-

mium by the month or by the year pays for the insurance for that month or year, is not true; that the contract is an entirety, if it be a life insurance policy, to insure the party for his life or the period named in the policy, and the premium is payable in installments.

Under the facts in this case as disclosed by the record—no evidence being offered by the defense—it would seem as though a very strong showing had been made that the company had waived the payment of the premiums upon the first day of each and every month by receiving the payments, month after month, after they had become due; by receiving the payment due in November in the middle of January; in giving to the party a book with the blanks contained therein to which I have referred; by notifying the party that if the agent did not come on the first day of the month, to bring the premium to the company; by reason of the fact that no notice had been given to the insured that her policy had been forfeited or suspended or had lapsed and no direct notice that it would be forfeited or suspended if she did not pay, and by making the collection on January 14—ten days before death—and by promising to come at a following or subsequent day and collect the balance that was due, and by actually coming before the death of Mrs. Cappell for the purpose of collecting it—on January 23—and by coming again on January 25, after her death, for the purpose of collecting the premium then due. In all this we have a very strong showing made, that the company had in fact waived its right to suspend the policy for nonpayment on the day the premium was due.

The policy of the law is against forfeitures. The equitable and just doctrine is that if a party gets all that is coming to him and all that is due to him, although it may be a short time after due, he should not be permitted to forfeit all the rights of the other party, especially if by his conduct he may be deemed to have waived the right to declare such a forfeiture.

We think that the common pleas court erred in directing the jury to return a verdict in favor of the insurance company. All the evidence should have been heard, the defendant given an opportunity to make its defense, and the case submitted to the jury, under proper instructions from the court. Therefore, the judgment of the court of common pleas will be reversed.